**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | |
|---|---|
| DAVID F. CAPPONI, LISA A. CAPPONI AND CHRISTIAN CAPPONI, A MINOR | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| Appellees | |
| v. | |
| ANN BERG | |
| Appellant | No. 1453 EDA 2015 |

Appeal from the Order Entered April 2, 2015
In the Court of Common Pleas of Philadelphia County
Civil Division at No(s): 0526 July Term, 2013

BEFORE:  BOWES, OLSON and STRASSBURGER,* JJ.

MEMORANDUM BY OLSON, J.:                **FILED AUGUST 11, 2016**

Appellant, Ann Berg, appeals from the order entered on April 2, 2015, which granted in part and denied in part the post-trial motion filed by David F. Capponi, Lisa A. Capponi, and Christian Capponi, a minor.  We are constrained to affirm.

On July 2, 2013, David F. Capponi, Lisa A. Capponi, and Christian Capponi instituted the current negligence action against Appellant.  The plaintiffs claimed they were entitled to personal injury and property damages that arose out of a January 15, 2013 motor vehicle accident.  The parties proceeded to a jury trial, where the following uncontradicted evidence was presented:

- At approximately 3:10 p.m. on January 15, 2013, Plaintiff David Capponi was driving his red Ford pickup truck eastbound on Grant

_____
*Retired Senior Judge assigned to the Superior Court.

Avenue in Philadelphia; David Capponi's son, Christian Capponi, was in the front passenger seat of the truck. N.T. Trial, 10/27/14, at 6-8 and 31.

- At approximately the same time, Appellant was operating a Honda automobile that was stopped and facing westbound on Grant Avenue. Specifically, Appellant was behind at least one car, in the left-hand turning lane of westbound Grant Avenue, and was seeking to turn left, travel across the eastbound lanes of Grant Avenue, and travel onto Krewstown Road. N.T. Trial, 10/29/14, at 6-8 and 16-17.

- The intersection of Grant Avenue and Krewstown Road was controlled by stoplights. At the time, Appellant was facing a stoplight that was composed of all of the following signals: a green left-turn arrow, a yellow left-turn arrow, a solid green light, a solid yellow light, and a solid red light. N.T. Trial, 10/28/14, at 91 and 101-105; N.T. Trial, 10/29/14, at 8.

- As witness Denise Smith (hereinafter "Ms. Smith" or "witness Denise Smith") testified: "[w]hen you're sitting at the intersection [like Appellant was that day,] . . . [the light] would be red[]. Then it turns to a green arrow left. Then it turns yellow, left arrow. Then it turns . . . [a] sold green for both sides." N.T. Trial, 10/28/14, at 91. When the light turns "solid green for both sides," individuals positioned westbound on Grant Avenue and seeking to turn left onto Krewstown Road (like Appellant was) must yield to the traffic flowing eastbound

on Grant Avenue, as those individuals also have a "solid green" light. *Id.* Moreover, individuals such as Appellant are also informed of the fact they must yield to the solid green light, with the placement of a sign that declares: "Left Turn Yield on Green." *Id.*

- When David and Christian Capponi (hereinafter collectively "the Capponis") passed into the intersection of Grant Avenue and Krewstown Road, the Capponis' vehicle collided with Appellant's automobile. Both vehicles suffered extensive damage. N.T. Trial, 10/27/14, at 13-19.

- A police officer at the scene offered to call the Capponis an ambulance, but David Capponi refused the offer and "told whoever offered the ambulance that [he and Christian Capponi] were both fine." *Id.* at 43-44.

- Appellant suffered a fractured breastbone and seven fractured ribs; Appellant was hospitalized for four days because of her injuries. N.T. Trial, 10/29/14, at 13.

During trial, the Capponis, Appellant, and witness Denise Smith all testified as to their memories of the accident. According to both David and Christian Capponi, when David Capponi drove through the intersection of Grant Avenue and Krewstown Road, he had a solid green light and Appellant simply turned right into his path. David Capponi testified:

> A: . . . as we were going through the intersection of Krewstown Road and Grant Avenue, we were struck. My

- 3 -

truck was struck by [Appellant's] car as I was proceeding through the intersection.

Q: As you were approaching the intersection, what was the speed limit?

A: The speed limit is 30 miles per hour.

Q: What speed were you [] traveling?

A: I was traveling the speed limit.

Q: In which of the two eastbound lanes were you in on that particular afternoon?

A: I was in the left hand lane.

Q: All right. Did you have occasion to observe the color of the traffic light for traffic on Grant Avenue, moving from west to east, that is, the direction you were traveling?

A: I had a green light.

. . .

Q: Did you have occasion to see [Appellant's] vehicle as you approached the imaginary center of that intersection?

A: Yes. . . . [Appellant] was in the turning lane of the opposing traffic. She was sitting in the opposing turning lane. They have a lane just to make a turn there, and her car was sitting there.

. . .

Q: As you started into the intersection, tell the [c]ourt and jury what occurred between your vehicle and [Appellant's] vehicle.

A: As we entered the intersection, for whatever reason, [Appellant] pulled out directly in front of my truck as I was in the intersection, and it was a shock. . . . I turned my truck to the right to go to the right hand lane, and she never stopped moving her vehicle. She kept coming at me.

- 4 -

. . . So the right side front of her car hit my driver's side fender as we were turning, and it knocked my truck to the right. . . . We went into a construction fence for the WaWa [Convenience Store] . . . [a]nd because it was a construction job, there was a base or a hole in the front of it where the storm water goes, and the truck was dangling there, and then we got out.

N.T. Trial, 10/27/14, at 8-11.[1]

Appellant testified that, immediately prior to the accident, she was stopped in the left-hand turning lane of Grant Avenue and was seeking to turn left onto Krewstown Road. N.T. Trial, 10/29/14, at 6-8. According to Appellant, the light controlling her vehicle "was green and then it turned yellow, and I noticed a little blue car in the right-hand lane against the curb . . . going east. So I made my turn." *Id.* at 9. As Appellant testified, "[t]he next thing I knew, I was hit and . . . spun almost into the . . . construction that was going on." *Id.* at 10. Appellant testified that, prior to being hit, she did not see the Capponis' red pickup truck. *Id.*

Witness Denise Smith also testified as to her memory of the accident. As Ms. Smith testified, immediately prior to the accident, she was operating

_____

[1] With respect to the cause of the accident, Christian Capponi testified similarly to David Capponi. Christian Capponi testified:

As we entered the intersection, . . . [o]ur light was green. . . . [Appellant's] vehicle made a left turn, cutting out in front of . . . us. . . . [M]y dad tried to swerve out of the way so we didn't hit her head on, and it hit the driver's side of the front of his truck. And we wound up inside of the ditch where they were building the new WaWa.

N.T. Trial, 10/28/14, at 52-53.

a vehicle and was stopped directly behind Appellant's vehicle, in the left-hand turning lane of Grant Avenue. N.T. Trial, 10/28/14, at 90. With respect to the accident, Ms. Smith testified:

> A: Okay. We were in the left-hand lane. I was behind [Appellant]. On that particular light, when it changes, you have a green arrow to make a left and then the traffic in the other two lanes can go at the same time.
>
> So, as the light turned green, I can't remember if there were cars in front of her. . . . But you have to wait your turn to make your left. You have to wait your turn until the light turns [yellow].
>
> Then when it turns [yellow], you're supposed to stop because the sign says "yield to green." The oncoming cars will be coming after that turns [yellow]. So I did see it turn [yellow] when she was still out in the intersection, and she didn't move then.
>
> . . .
>
> Q: Now, who hit who?
>
> A: It was a red truck. And it would have had to be in the right lane coming towards us, not the center lane, but the right lane, and he clipped her.
>
> It looked like he clipped her right on the passenger's side. . . .

*Id.* at 91-92.

Ms. Smith testified that she did not see the color of the traffic light at the specific time that Appellant began her turn. However, Ms. Smith testified that she saw the light "turn yellow when [Appellant] was waiting in the line and [Appellant] didn't move." *Id.* at 113. As Ms. Smith testified:

Q: Did you tell us on direct examination that [Appellant] started to make her left hand turn onto Krewstown Road and the light was yellow at that point in time?

A: The light had turned [yellow]. I don't know exactly when she started moving up, but I saw the light turn [yellow]. . . . So it was a green arrow, then it went to yellow, then the light just turned green for everybody to go.

Q: All right. But at that point in time when [Appellant] started –

A: She didn't move on the yellow light.

Q: Pardon me?

A: She did not move on the yellow light.

. . .

Q: So what color was the controlling traffic device for westbound traffic on Grant Avenue when [Appellant] started to make her left hand turn?

A: I didn't see the color of the light at that point.

Q: You didn't see the color?

A: I did not.

*Id.* at 102-103.[2]

_____

[2] During trial, Ms. Smith also acknowledged that, at the scene of the accident, she told an officer the following:

Q: Well, do you recall stating that the light went from solid green to yellow, and that when the light turned yellow, traffic cleared for [Appellant] to turn? She began her left turn and soon as she started turning, what's called the "Capponi vehicle" came from the opposite side of traffic and they collided"

*(Footnote Continued Next Page)*

As to whether Ms. Smith saw the Capponis' vehicle prior to the accident, Ms. Smith testified in a seemingly contradictory manner. Initially, Ms. Smith testified that she saw the Capponis' vehicle prior to the accident and that the Capponis' vehicle was "traveling fast." Ms. Smith testified:

> Q: You saw the truck proceeding in the opposite lane?
>
> A: Yes.
>
> Q: Describe the manner in which it was proceeding in the opposite lane.
>
> A: It was traveling fast.

*Id.* at 93.

However, Ms. Smith later testified that she did not see the Capponis' vehicle approach the intersection – and that she first saw the Capponis' truck when it was "colliding with [Appellant's] vehicle." *Id.* at 107. According to this version of the events:

> Q: Where was the [Capponis'] truck when you first saw it . . . ? Was it in the intersection?
>
> A: It was impacting her car in the intersection, yes.
>
> Q: So when you first saw it, it was in the intersection? By "intersection," we mean the intersection of Grant Avenue with Krewstown Road?
>
> A: Yes.

*(Footnote Continued)* ⎯⎯⎯⎯⎯⎯⎯⎯⎯⎯⎯

> A: If that's what I said, then that's what I said if that's what the officer wrote down.

N.T. Trial, 10/28/14, at 104.

Q: And it was colliding with [Appellant's] vehicle?

A: Correct.

Q: Okay. And that was the first time that you saw this red truck?

A: Yes.

*Id.* at 106-107.

Moreover, at trial, both Christian Capponi and osteopathic physician Dr. William J. O'Brien (hereinafter "Dr. O'Brien") testified regarding the extent of Christian Capponi's alleged injuries. Christian Capponi testified that the accident caused him to suffer bulging discs in his thoracic and lumbar spine and that he suffers from middle and lower back pain "every single day." *Id.* at 60-66. Yet, Christian Capponi testified that he: did not go to the hospital on the day of the accident; felt no pain at the accident scene; did not miss any time from school as a result of the accident; did not miss any time from his construction job as a result of the accident; and, was still able to lift heavy things in his construction job after the accident. *Id.* at 73-78. Further, Christian Capponi testified that, after the accident, he went to see Dr. O'Brien for his back pain. Christian Capponi testified that Dr. O'Brien performed an initial MRI on his back and, "[f]rom the first MRI, [Dr. O'Brien] said my back was in immaculate condition. He didn't see anything wrong with it." *Id.* at 61. However, later MRIs revealed that Christian Capponi suffered from multiple bulging discs in his spine. *Id.* at 64-65.

During trial, Dr. O'Brien testified as both a lay and an expert witness. As Dr. O'Brien testified, it was his "medical opinion within a reasonable degree of medical certainty . . . that the MRI findings of multiple disc bulges are directly related to the car accident of January 15[, 2013]." N.T. Trial, 10/27/14, at 92-93. However, Christian Capponi testified that "the first time [he] had ever been under any medical care or treatment with [Dr.] O'Brien" was after the accident – and, according to Dr. O'Brien's testimony, Dr. O'Brien did not "ever get any past medical . . . records for Christian [Capponi]." N.T. Trial, 10/28/14, at 59; N.T. Trial, 10/27/14, at 116. Moreover, with respect to the cause of Christian Capponi's back injuries, Dr. O'Brien admitted during trial that: he "wasn't aware [Christian Capponi] was doing construction work with his father;" he "wasn't aware [Christian Capponi] was doing . . . [things s]uch as sweeping, lifting things, throwing out trash;" and, was not aware that Christian Capponi "has even gone snowmobiling in January or the early part of th[e] year" 2014. N.T. Trial, 10/27/14, at 114-116.

After the evidence was presented, the trial court submitted to the jury a "general verdict with special findings." After deliberation, the jury rendered its verdict. In open court, the jury announced that Appellant was negligent, but that Appellant's negligence was not a factual cause of any harm to either David or Christian Capponi. N.T. Trial, 10/30/14, at 3-4. Therefore, the jury's verdict was for Appellant.

Moreover, attached to the certified record are the jury's two verdict slips.[3]  In relevant part, the jury's verdict slip for David Capponi reads as follows:

JURY VERDICT SHEET FOR PLAINTIFF DAVID CAPPONI

Question 1:
Was [Appellant] negligent?
    Yes __X__ No _____

If you answer Question 1 "Yes", go to Question 2.

If you answer Question 1 "No", David Capponi cannot recover and you should not answer any further questions. Tell the court officer you have reached a verdict.

Question 2:
Was the negligence of [Appellant] a factual cause of any harm to David Capponi?
    Yes _____ No __X__

If you answer Question 2 "Yes", go to Question 3.

If you answer Question 2 "No", David Capponi cannot recover and you should not answer any further questions. Please tell the court officer you have reached a verdict.

Question 3:
Was plaintiff David Capponi negligent?
    Yes __X__ No _____

If you answer Question 3 "Yes", go to Question 4.

If you answer Question 3 "No", go to Question 6.

_____

[3] In order to understand Appellant's arguments on appeal, we are required to restate the jury verdict sheets.

Question 4:
Was David Capponi's negligence a factual cause of any harm to him?
     Yes __X__   No _____

If you answer Question 4 "Yes", go to Question 5.

If you answer Question 4 "No", go to Question 6.

Question 5:
Taking the combined negligence that was a factual cause of any harm to David Capponi as 100[%], what percentage of that negligence do you attribute to [Appellant] and what percentage do you attribute to David Capponi?

     Percentage of negligence attributable to [Appellant]
     __10__%

     Percentage of negligence attributable to David Capponi
     __90__%

     Total 100%

If you have found David Capponi's negligence is greater than 50[%], David Capponi cannot recover and you should not answer any other questions.  Please tell the court officer you have reached a verdict.

If you have found David Capponi's percentage less than or equal to 50%, go to Question 6.

Question 6:
Please state the amount of David Capponi's economic damages.

. . .

Question 7:
Do you find that the plaintiff, David Capponi, sustained a serious impairment of a body function?

. . .

Question 8:

State the amount of noneconomic damages, if any, sustained by David Capponi as a result of the accident.

. . .

Advise the court officer that you have reached a verdict.

Jury Verdict Sheet for David Capponi, 10/30/14, at 1-3 (internal bolding omitted).

With respect to David Capponi, the jury did not answer any question after "Question 5." However, the jury answered questions three, four, and five, even though it answered "No" to "Question 2" and even though it was instructed: "[i]f you answer Question 2 'No', plaintiff David Capponi cannot recover and you should not answer any further questions. Please tell the court officer you have reached a verdict." *Id.* at 1.

As to Christian Capponi, the jury's verdict slip reads:

JURY VERDICT SHEET FOR PLAINTIFF CHRISTIAN CAPPONI

Question 1:
Were any of the defendants negligent? Please answer for each defendant.

[Appellant]:      Yes __X__    No _____

David Capponi:   Yes __X__    No _____

If you answer Question 1 Yes as to any defendant, go to Question 2.

If you answer Question 1 "No" as to all defendants, Christian Capponi cannot recover and you should not answer any further questions. Tell the court officer you have reached a verdict.

Question 2:

Was the negligence of those defendants you have found to be negligent a factual cause of any harm to Christian Capponi? Only answer for those defendants you have found negligent in response to Question 1.

[Appellant]: Yes _____ No __X__

David Capponi: Yes _____ No __X__

If you answer Question 2 "Yes" as to any defendant, go to Question 3.

If you answer Question 2 "No" as to all defendants you have found to be negligent, plaintiff Christian Capponi cannot recover and you should not answer any further questions. Please tell the court officer you have reached a verdict.

Question 3:
Taking the combined negligence that was a factual cause of any harm to the plaintiff as 100[%], what percentage of that negligence do you attribute to each party?

. . .

Question 4:
Please state the total amount of damages sustained by the Plaintiff Christian Capponi, as a result of the accident.

. . .

Advise the court officer that you have reached a verdict.

Jury Verdict Sheet for Christian Capponi, 10/30/14, at 1-3 (internal bolding omitted).

With respect to Christian Capponi, the jury did not answer any question following "Question 2." *Id.*

On November 6, 2014, the Capponis filed a timely post-trial motion. Amongst other things, the Capponis claimed that they were entitled to a new

- 14 -

trial because: 1) the jury's determination that David Capponi was negligent was against the weight of the evidence because the uncontradicted evidence demonstrated that the accident was "caused exclusively or entirely by [the] negligent operation of [Appellant, who] failed to remain in a stopped position in the left hand turning lane from west[]bound Grant Avenue and who in violation of the controlling traffic signals proceeded without making required and proper look for on-coming or approaching traffic on Grant [Avenue];" 2) the jury's determination that Appellant's negligence was not the factual cause of the harm to David Capponi was against the weight of the evidence; and, 3) the jury's determination that Appellant's negligence was not the factual cause of the harm to Christian Capponi was against the weight of the evidence. The Capponis' Post-Trial Motion, 11/6/14, at 1-9.

By order entered April 2, 2015, the trial court granted the Capponis' post-trial motion in part and denied the motion in part. Specifically, the trial court granted the Capponis a new trial on the issues of: liability; David Capponi's property damage claim; and, Christian Capponi's personal injury claim. Appellant filed a timely notice of appeal.

Within the "Statement of Questions Involved" section of Appellant's brief,[4] Appellant lists four claims:

---

[4] *See* Pa.R.A.P. 2116(a).

1. Did the trial court, in the course of deciding [] David Capponi's motion for a new trial, commit prejudicial error and/or an abuse [of] discretion in setting aside and/or vacating the jury's determination finding [David Capponi 90%] negligent and determining the jury's finding is not supported by the record?

2. Did the [trial] court, in the course of deciding [] David Capponi's motion for a new trial, commit prejudicial error and/or an abuse of discretion in setting aside and/or vacating the jury's determination finding [David Capponi 90%] negligent and determining that David Capponi is entitled to a new trial on property damage where the Pennsylvania Comparative Negligence Act precludes him from any recovery of damages?

3. Did the [trial] court, in the course of deciding [] Christian Capponi's motion for a new trial, commit prejudicial error and/or an abuse of discretion in setting aside and vacating the jury's determination finding [David Capponi 90%] negligent and determining the jury's finding is not supported by the record?

4. Did the [trial] court, in the course of deciding [] Christian Capponi's motion for a new trial, commit prejudicial error and/or an abuse of discretion in setting aside and vacating the jury's determination finding [David Capponi 90%] negligent and determining the jury's finding is not supported by the record, the issue of liability was fairly determined by the jury, and the question of damages for Christian Capponi only was readily separable from the issue of liability between [Appellant] and [] David Capponi?

Appellant's Brief at 9 (some internal capitalization omitted).[5, 6]

---

[5] The Capponis have not filed an opposing brief with this Court.

[6] The trial court ordered Appellant to file and serve a concise statement of errors complained of on appeal, pursuant to Pennsylvania Rule of Appellate Procedure 1925(b). Appellant complied and, within her Rule 1925(b) Statement, Appellant listed the four claims found in her Rule 2116(a) "Statement of Questions Involved."

However, within the argument section of Appellant's brief, Appellant raises only three claims. Further, the claims Appellant raises in the argument section of her brief differ somewhat from the claims Appellant lists in her Rule 2116(a) "Statement of Questions Involved" on appeal section. Specifically, within the argument section of Appellant's brief, Appellant raises the following claims. First, Appellant claims that "the verdict of a jury should not be disturbed where no reversible error has been committed." *Id.* at 17 (internal bolding and capitalization omitted). Second, Appellant claims: "because the jury found David Capponi's negligence was greater than 50%, his recovery is precluded under the Pennsylvania Comparative Negligence Act and it was improper for the trial court to set aside and/or vacate the judgment for [Appellant]." *Id.* at 23 (internal bolding and capitalization omitted). Finally, Appellant claims:

> the jury fairly determined liability against [Appellant] and []
> David Capponi and apportioned the liability between them.
> It would be prejudicial to re-litigate the issue of liability that
> a duly appointed jury has fairly determined. . . . As such,
> [A]ppellant respectfully requests that this Court . . .
> determine that David Capponi is 90% negligent and
> [Appellant] was 10% negligent for the purposes of trial or
> arbitration on damages for Christian Capponi only.

*Id.* at 33.

We conclude that none of the three claims Appellant develops before this Court entitles Appellant to relief.[7]

We have held:

> The factfinder is free to believe all, part, or none of the evidence and to determine the credibility of the witnesses. The trial court may award . . . a new trial only when the jury's verdict is so contrary to the evidence as to shock one's sense of justice. . . . When a fact finder's verdict is so opposed to the demonstrative facts that looking at the verdict, the mind stands baffled, the intellect searches in vain for cause and effect, and reason rebels against the bizarre and erratic conclusion, it can be said that the verdict is shocking.
>
> . . .
>
> Appellate review of a weight [of the evidence] claim is a review of the trial court's exercise of discretion, not of the underlying question of whether the verdict is against the weight of the evidence. Because the trial judge has had the opportunity to hear and see the evidence presented, an appellate court will give the gravest consideration to the findings and reasons advanced by the trial judge when reviewing a trial court's determination that the verdict is against the weight of the evidence. One of the least assailable reasons for granting or denying a new trial is the lower court's conviction that the verdict was or was not against the weight of the evidence and that a new trial should be granted in the interest of justice.

_____

[7] As stated above, the three claims Appellant raises in the argument section of her brief differ somewhat from the four claims Appellant lists in the "Statement of Questions Involved" section. Since "[i]ssues not properly developed or argued in the argument section of an appellate brief are waived," when referencing Appellant's claims in this memorandum, we will refer to the three claims Appellant actually raises in the argument section of her brief. *Kituskie v. Corbman*, 682 A.2d 378, 383 (Pa. Super. 1996).

*Haan v. Wells*, 103 A.3d 60, 70 (Pa. Super. 2014) (internal quotations and citations omitted).

"The trial court's decision whether to limit a new trial to a particular issue or grant a new trial as to all issues will not be reversed absent an abuse of discretion." *Chiaverini v. Sewickley Valley Hosp.*, 598 A.2d 1021, 1024 (Pa. Super. 1991). As our Supreme Court held, "new trials may be limited to specific issues only when this procedure will be fair to both parties. Where the question of negligence or contributory negligence is not free from doubt, it is an abuse of discretion for the trial judge to grant a new trial on the issue of damages alone." *Gagliano v. Ditzler*, 263 A.2d 319, 320 (Pa. 1970) (internal quotations and citations omitted); *Nogowski v. Alemo-Hammad*, 691 A.2d 950, 958 (Pa. Super. 1997) (internal quotations and citations omitted). In particular:

> a [trial] court may grant a new trial[] limited to the issue of damages[] [o]nly where (1) the question of liability is not intertwined with the question of damages, [a]nd (2) the issue of liability is either (a) not contested or (b) has been fairly determined so that no substantial complaint can be made with respect thereto.

*Gagliano*, 263 A.2d at 320; *see also Mirabel v. Morales*, 57 A.3d 144, 152 (Pa. Super. 2012).

We have held that liability is "fairly determined" when "the court is convinced upon a review of the whole case that the jury settled the issue as to responsibility fairly and upon sufficient evidence – so that dissociated from the other questions it ought to stand as the final adjudication of the

rights of the parties." ***Lambert v. PBI Indus.***, 366 A.2d 944, 956-957 (Pa. Super. 1976) (*en banc*), *quoting* 58 Am.Jur.2d New Trial, § 27 (1971).

On appeal, Appellant first claims that "the verdict of a jury should not be disturbed where no reversible error has been committed." Appellant's Brief at 17 (internal bolding and capitalization omitted). This claim is waived, as Appellant did not raise the claim in her court-ordered Rule 1925(b) statement and the claim is not "fairly suggested" by her Rule 2116 "Statement of Questions Involved."[8] Pa.R.A.P. 1925(b)(4)(vii) ("[i]ssues not included in the [Rule 1925(b) s]tatement . . . are waived"); Pa.R.A.P. 2116(a) ("[n]o question will be considered unless it is stated in the statement of questions involved or is fairly suggested thereby").

Second, Appellant claims: "because the jury found David Capponi's negligence was greater than 50%, his recovery is precluded under the Pennsylvania Comparative Negligence Act and it was improper for the trial court to set aside and/or vacate the judgment for [Appellant]."[9] Appellant's Brief at 17 (internal bolding and capitalization omitted). This claim fails.

---

[8] Moreover, Appellant's first claim on appeal is meritless, as the trial court did not grant the Capponis a new trial based upon any alleged error; rather, the trial court granted the Capponis a new trial based upon their claim that the verdict was against the weight of the evidence.

[9] Appellant raised this claim in both her Rule 1925(b) statement and her Rule 2116(a) statement.

Here, the trial court submitted to the jury a "general verdict with special findings." As the Pennsylvania Supreme Court explained:

> Generally, a verdict is the decision of a jury reported to the court on matters submitted to the jury at trial. In Pennsylvania, verdicts may be general, special, or general with special findings. A general verdict is a finding by the jury in terms of the issue or issues referred to them and is, either wholly or in part, for the plaintiff or for the defendant. Thus, when a trial judge requires only a general verdict slip, a jury will be call[ed] upon only to find "for plaintiff in the amount of . . ." or "for defendant." No other substance will appear on the general verdict slip.
>
> In contrast, when the trial court exercises its discretion to employ a general verdict with special findings . . . the analytical subparts of the jury's process will be set forth in individual questions to be answered by the jury, and the answers thereto are always given in connection with the ultimate general verdict. To the extent the answer is "no" to a particular question, the general verdict slip with special findings becomes a *de facto* "verdict for defendant." Conversely, should the jury arrive at the last question, the slip's "bottom line" looks akin to the general verdict slip in that the amount of damages awarded to the plaintiff are specified.
>
> As [the Pennsylvania Supreme Court] explained in ***Brown v. Ambridge Yellow Cab Co.***, 97 A.2d 377, 381 (Pa. 1953), when special findings are employed in connection with a general verdict, the jury's decision is the general verdict, not the answers to the individual interrogatories:
>
>> Taking the answers [to the interrogatories] as a whole one cannot say that they represent a mathematical exactness and factual certainty of such impeccability as to overturn the deliberate and solemn conclusion reached in the general verdict. It would appear that the jury, after due deliberations, reached its conclusions and then perfunctorily and hurriedly attempted to answer the voluminous interrogatories. Logic does not require, and there is no law which compels acceptance of the

> special findings here, shot through as they are with inconsistencies, vagueness and inconclusiveness, as against the general verdict, which with authority and definitiveness declares: "we, the Jurors . . . find for the Plaintiff . . . in the amount of $8000.00. . . ."
>
> In fact, in the usual case where special findings are consistent with the general verdict, the special findings are considered merely advisory.

*Fritz v. Wright*, 907 A.2d 1083, 1091-1092 (Pa. 2006) (internal footnotes and some internal quotations and citations omitted);

Further, as our Supreme Court held: "the only verdict which is valid is one announced in open court and there affirmed." *Reed v. Kinnik*, 132 A.2d 208, 210 (Pa. 1957); *see also Commonwealth v. Zlatovich*, 269 A.2d 469, 473 (Pa. 1970) ("[t]he verdict as uttered is the sole embodiment of the jury's act"); *Rottmund v. Pa. R. Co.*, 74 A. 341, 343 (Pa. 1909) ("[t]here is no verdict of any force except a public verdict, given openly in court. This is the practice uniformly followed throughout the state so far as we are advised. All the authorities agree that the only verdict is that which the jury announce orally in court, and which alone is received and recorded as the jury's finding") (internal quotations and citations omitted).

According to Appellant, the trial court erred in granting David Capponi's motion for a new trial because "the jury found David Capponi's negligence was greater than 50%" and, thus, David Capponi's "recovery is precluded under the Pennsylvania Comparative Negligence Act." Appellant's Brief at 23. This claim fails because the jury did not "fairly determine" David Capponi's liability.

As explained above, the jury announced the following verdict in open court:  Appellant was negligent, but Appellant's negligence was not a factual cause of any harm to either David or Christian Capponi.   N.T. Trial, 10/30/14, at 3-4.  This was the entirety of the jury's verdict.  Moreover, the jury's determination that Appellant's negligence was not a factual cause of any harm to either David or Christian Capponi foreclosed any further inquiry: as a result of this finding, "the general verdict slip with special findings bec[ame] a *de facto* 'verdict for [Appellant].'"  **Fritz**, 907 A.2d at 1092.

It is true that, within the Jury Verdict Sheet for David Capponi, the jury continued to answer questions after answering "No" to "Question 2": "[w]as the negligence of [Appellant] a factual cause of any harm to David Capponi."   Jury Verdict Sheet for David Capponi,  10/30/14,  at  1-3. However, the jury verdict sheet informed the jury:  "If you answer Question 2 'No', David Capponi cannot recover and you should not answer any further questions.  Please tell the court officer you have reached a verdict."  **Id.**

Therefore, according to the plain terms of both the law and the verdict sheet, the jury should not have apportioned liability between Appellant and David Capponi.   Moreover, the jury did not "announce orally in court" its apportionment of liability.  **Rottmund**, 74 A. at 343.  As such, the jury's purported apportionment of liability did not become part of the verdict.

In light of the above, in this case, we conclude that the jury did not "fairly determine" David Capponi's liability.  As a result, Appellant's claim – that, "because the jury found David Capponi's negligence was greater than

50%, his recovery is precluded under the Pennsylvania Comparative Negligence Act" – fails.

Finally, Appellant claims:

> the jury fairly determined liability against [Appellant] and [] David Capponi and apportioned the liability between them. It would be prejudicial to re-litigate the issue of liability that a duly appointed jury has fairly determined. . . . As such, [A]ppellant respectfully requests that this Court . . . determine that David Capponi is 90% negligent and [Appellant] was 10% negligent for the purposes of trial or arbitration on damages for Christian Capponi only.

Appellant's Brief at 33.

As can be seen from the above, Appellant does not claim that the jury properly determined that Christian Capponi suffered no damages – and that the trial court thus erred when it ordered a new trial on Christian Capponi's personal injury claims. Indeed, Appellant's argument assumes that the trial court was **correct** to order a new trial on Christian Capponi's personal injury claims. ***See id.*** Appellant simply claims that this Court should "determine that David Capponi is 90% negligent and [Appellant] was 10% negligent for the purposes of trial or arbitration on damages for Christian Capponi only." ***Id.***

This particular claim does not entitle Appellant to relief. Certainly, as was explained above, the jury did not "fairly determine" the liability that was attributable to Appellant and David Capponi. Therefore, the trial court properly ordered a new trial on the issue of liability. Appellant's claim on appeal fails.

Order affirmed.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary

Date: 8/11/2016